Petitioner, Mr. Casterly for the respondent, and Mr. Pyle for the intervener. Good morning, Judge. Ken Sparks for Petitioner, Equinox Holdings. Good morning. Judges, this case grows out of a close NLRB election that was decided by the votes of four voters. The change their mind, the outcome of this election is different. There are two principal arguments to discuss on the appeal. The first issue is whether or not the NLRB abused its discretion by allowing a party to place a person known to the voters in this community to have brought a gun to work only four days prior to this election. The second issue and the alternative issue is a subpoena issue. Whether that same individual, there are additional threats attributed to that same individual. They were attributed by a witness and an employee who was reluctant to come in and testify. He had told the manager about his concerns. He had told the manager about the threats. Those threats were relayed to the hearing examiner. The hearing examiner refused to recess the hearing to enforce a subpoena when the employee would not come in voluntarily to relay those statements. What bothers me, counsel, on the second issue is there never was a proffer by the employer suggesting that the witness would testify that the observer had brandished the gun and connected it in some way with the campaign or the election. Judge, there are two responses, I think, to that issue. The first issue is the other evidence that occurs, obviously, in the case. The brandishing of the gun occurs only days before the election. The brandishing of the gun or not brandishing of the gun is not the key to me and to the board, which is there's no connection between that act and the union campaign or the election. In other words, no witness was proffered for the proposition that the observer had brandished the gun and said something about the gun and the election, right? There certainly isn't a formal offer of proof on that issue, but the employer in this situation is handicapped in several ways. In an NLRB proceeding, an employer is not permitted discovery. You don't have depositions. You don't have the ability even to require a current employee to answer questions of your counsel to prepare for the hearing. In this case, the employee had voluntarily made certain statements to a supervisor. The supervisor testified to those statements. There was a statement made to the supervisor that was tendered to the court in the supervisor's testimony that the employee was prepared to testify that the gun was in case anyone got crazy. The only issue that we know of in controversy at the facility at that time was the union election. It was a closely contested election. Given the connection between the employee and the union days after the alleged threat is made, he becomes a union agent at that point for a call center, later as an observer at the election. Given that connection between the person who made the threat, Mr. Quarles, and the union, given the statement, it refers to something that he believes may be driving him crazy. There's enough there to bring a witness in to find out if there's more. Again, was there a formal offer of proof? No. But there's many things in the record that point to a concern about whether or not that statement is related to this election. And we believe there's enough evidence there to warrant enforcing the subpoena. Remember the... But what is in the record about what that witness would have testified about? What's in the record is the testimony of a supervisor to whom that witness had confided previously at work. That supervisor's testimony goes through the statements made to him, the brandishing of the gun. But just summarize what that supervisor said that this person had told him or her. That supervisor told him or her that he was aware that Quarles had a gun at work, that he frequently brought that gun to work, that he had brandished it in a break room at one of the three clubs involved here at the Union Street facility, and that a statement was made that he had the gun in place, quote, any fuckers got crazy, close quote. That was the summary of the testimony of what had been said to the supervisor. There were also statements made to the court when there was an attempt to subpoena and bring the employee in, that the employee had expressed fear in the courthouse of the union because of the prior threats, and at least in the opinion that he expressed fear of the union. That's not what I read. I read him to say that he was scared. Lots of witnesses are scared to testify or to get involved, and I didn't read even that representation to be that he was scared of the union or scared because of some sort of threat. He's certainly fearful to come in before the proceeding. The only party to the proceeding besides the NLRB is the union and Equinox. He's fearful to come in. Is there enough there, the question, though, to force a subpoena? I objected to the threats statement because I didn't see anything about a threat to him. I'm not suggesting that there was an affirmative threat made to the employee should he testify. If I misspoke in that regard, I apologize. I mean, I've dealt with a lot of witnesses who were scared to come to court because they just didn't want to get in the middle of it, and they didn't know who was going to be mad at them, but they knew that somebody would likely be mad at them because they're going to testify kind of for one side or the other. Even if you assume, and Judge Edwards and I are rather familiar with this process, both having practiced in this area at one time, even if you assume that the employee was afraid of disputing or fighting with the union, there's still a gap of any proper proof that the observer, whose name I've forgotten, had, when brandishing his fake gun, had said anything that connected his comment about crazies to people who opposed the union. Again, our position is that there was enough that was in the record to suggest that he could have been questioned at the stand. The witness could have been questioned on the stand. Well, but the question is whether the hearing officer so abused his discretion that he denied an enforcement of subpoena process, which is complicated, when he doesn't have a specific proffer. Again, there is sufficient information, we believe, through the supervisor's testimony, through the employee's refusal to appear. We think that is enough to... There's nothing inconsistent on board law on this question, is there? There's certainly nothing inconsistent in terms of similar factual situations. The board has certainly held their discretion within a hearing officer as to when to recess a hearing. The question is whether or not there's sufficient evidence here to justify the decision not to call. We believe there's not. What about your first issue? The first issue concerns whether or not that same individual should be permitted to serve as an observer for a party. There's no question at the time of service as an observer that an individual represents the party. There is no question here in the... Aren't you really swimming up river now in light of board precedent? Yes, Judge, I think we're swimming that up somewhat. But the question really becomes... He's merely with one arm. He's a strong swimmer, Judge. The real question here is whether or not when you look at all the facts and what the employees knew, because there isn't any real dispute about dissemination of the fact that a gun was found in the workplace, the fact that the individual, Mr. Quarles, was walked through the workplace in handcuffs. No dispute about that. No dispute it was known by a dispositive number of voters. But the problem for you is that that happened at a different location than the location where he was an observer. He was an observer at Pine Street. And this happened at Market Street, right? You are correct regarding Market and Pine. However, there was a finding, both by the hearing officer and the board acknowledged it as well, that at least four or five employees at Pine Street were aware of that incident as well. What's the substantial evidence in support of that when there was only one Pine Street employee who testified that she was aware of it? And I think that she said that she was a Pine Street employee who was aware of it. So what's the evidence that there were four or five people at Pine Street who were aware of it? There's also the evidence that other observers who were present in the polling area when there's objection made to Mr. Quarles' presence is there. Again, there is an issue as to dissemination. The board and the courts have always presumed in a close election that there will be some dissemination in the absence of testimony that there is none. Again, the question... But he is in... The board's law on this, he's an agent of the union only for purposes of the observer's status. With respect to his other activities, he is a third party. He's under the third party rules, which are pretty difficult to overturn in an election based on that. Certainly, the Westwood standards are an uphill battle for employers or other parties seeking to overturn an election. However, there is still the question of agency here. While they're agents for purposes of what occurs during their time as an observer, an observer does not walk into that location without bringing his or her past and her past reputation with them. By being placed in that polling area, by being placed in front of the list of voters that include their home addresses, their telephone numbers, and other information, the union has effectively imbibed that person with additional imprimatur in front of employees. The employees see that person. They know that they're checking them. The board has been careful not to hold as you are just starting. They certainly have not found a case that perhaps meet their standard, but they have not said that the issues of prior misconduct or prior status prior to the observer is irrelevant. The board's brief suggests that this is an irrelevant issue. Whatever may have happened, whatever their status may have been prior to their appointment as an observer, that you don't even look backwards. That's not a correct statement of the law if you look at the underlying cases. The board is certainly concerned. Are they asking the board questions about that? Again, as to the second issue, we think the most important fact there is that enough employees knew about the prior gun incident, the welding of the gun, the walking through the facility, that at least there were findings on the record by the board that as many as four or five people may have known in the Pine Street facility about the prior incidents. They've at least inferred that there's some degree of dissemination, and we believe that adequate in those circumstances to require the board to address either under the party standards or alternatively under the Westwood standards what the meaning is of the prior welding of a gun when an observer is in the voting area. Again, we think either of those issues are sufficient to overturn the decision below and refuse enforcement. As to the first issue, the observer's presence within the polling area, that would require a rerun on its face if you grant that issue. As to the subpoena issue, that would require a remand to the NLRB for further determination as to whether further hearings were necessary. All right. Thank you. We'll give you time to rebut. Thank you. Good morning, Mr. Kesserle. Good morning, Your Honor. And may it please the court, the credited facts in this case tell a far different story than what the employer has argued.  Yes, Your Honor. Suppose the observer had been overheard at the time he was in possession or brandishing the gun, stating that this is to be used to make sure the election comes out the right way. Is your entire case different? Different? Definitely yes, Your Honor. No, no. Different result. Different result? I would have to see what the board would say in that situation. It would depend under... Under your understanding on board law. Well, under... I'm not asking you to rule on the case, but wouldn't that be enough to make it improper? No, no, no. Let's... Let me make it more precise. The proffer is that he would... That the supervisor would testify that when the observer brandished the gun, he said, this gun is here to affect the election and to intimidate people who would be opposed to the union. It would be an abuse of discretion not to subpoena, not to enforce a subpoena to call him. Well, under the hearing officer's reasoning, Your Honor, the hearing officer would have enforced that subpoena or the RD would have after since the primary reason for not doing so was that that connection wasn't there. So you agree... But how do we know that he would have though? Because he thought that he didn't have the authority to enforce the subpoena, right? Well, Your Honor, he said that at the hearing, but that wasn't part of the reasoning after. So, you know, the hearing officer said that at the hearing that he didn't think he had the authority, but then when he went back to write his decision, that wasn't what he relied on. And that's not what the RD relied on either in adopting the hearing officer's finding on that point. Okay. I'm sorry I interrupted Judge Silberman, but I wanted to challenge you on that point. Go ahead. I'm asking you what the board's position now is as you... And the appellate process. If that was the proffer, do you not agree that it would be an abuse of discretion not to seek... To enforce the subpoena? I think, yes, Your Honor. I mean, certainly there's no... There's nothing under the hearing officer's reasoning that would speak to that situation otherwise. All right. in connection with the election to threaten those who are against the union. Is there any question in your mind that the regional director's decision should be overturned if that evidence was there? If that had been the case, it would require a remand because that does undermine the analysis that the regional director... Well, in this case, it would deny enforcement. Yes, Your Honor. Well, and a remand to determine... No, I don't think in this case we would remand if that evidence was there. Well, there would need to be a rerun election and the board would have to... Yes, of course. Yeah. No, no. Why no? You wouldn't know. Or to enforce the subpoena. No, no, no. You're here to enforce your 885 determination. You would refuse to enforce under those circumstances. You'd be stuck. But the remedy for... That would necessarily be a remand at all. No or no election. Well, the bargaining order... Okay. The bargaining order wouldn't be enforced, but the hearing officer would need to have another opportunity then to reopen the hearing to... You know what? The board's orders are not self-enforcing. You have to come to court. In those circumstances, we would simply deny enforcement. That would be the end of the matter. Now, the union could file a new petition and a new election. But in this case... Only after a year. That would have passed. I'm sorry, Your Honor. I understood your question as going to if there were some evidence that the employee would testify that there had been a threat like that. There are two questions. One was the enforcement of the subpoena. Okay. The second was, suppose the evidence is actually in there. In there. Okay. And if the evidence is in there that an employee was brandishing a gun for the purpose of scaring people who would vote against the union, it seems to me clear that we would refuse to enforce the order. Yes, Your Honor. I mean, I guess there's no real... I don't think that... I can't imagine the board coming out with a conclusion that it would come out with in this case. So I don't think you're giving away anything. No, Your Honor. And also, I mean, the reason I'm hesitating there is that under the Westwood standard, if the employee had said that and there were evidence that that employee never told any other employee, so there was absolutely clearly no dissemination, then I can imagine a situation where the board might say, okay, this is not determinative. That's possible. That's possible. But... Am I reading the record correctly? The request for the subpoena was to get what would have been hearsay on hearsay? As I was reading it, someone said that someone said it. Yes, Your Honor. Is that what the board... Did the board rely on that in part? I mean, that alone, it seems to me, is suspect. You want a subpoena to get something that someone said that someone said? I wouldn't credit it anyway. That's true, Your Honor. Although, to be fair, the subpoena was also going to whether Mr. Quarles brandished the gun, and that's not... I thought that was conceded. No, Your Honor. It was not conceded that Mr. Quarles brandished the gun to this other employee. Actually, I have to consult with my colleague on this. I don't think that is hearsay. Well, I don't know. I couldn't tell from the record. If there was testimony that the observer, when he brandished the gun, stated this is for the purpose of intimidating people who would vote against the union, that statement comes in not for the truth of the matter of certain, but for its impact on fear. That's right, Your Honor. So it really isn't hearsay. But I thought it was someone was going to say that I heard someone else say that. That's hearsay. Not that that person heard him or herself. But I can testify that someone else said that. Is that right? No, Your Honor. The subpoena was to the employee who was allegedly threatened or who saw the... I just was not clear for me on the record. Okay. But to be clear, that connection that we've been discussing between the two, there's simply no evidence that that occurred. And no evidence that it occurred during the critical period, if it did. The employer has said that was four days before the election, but there's simply nothing in the record and nothing in the manager's hearsay that even would place it at that time. There's no evidence of dissemination. There's no evidence of Mr. Quarles' union agent status, certainly at that time, until he was observer. So given those circumstances, it seems difficult for the board to have to postpone a hearing for potentially months while getting a subpoena enforced in order to have this employee testify. You're not taking the position that the brandishing of the gun was protected by the Second Amendment, are you? No, Your Honor. I'm a little confused as to your position with respect to the factual finding that four or five people at Pine Street were aware of the alleged gun brandishing or gun possession. Yes, Your Honor. Because you say in the footnote that there's really no evidentiary support for that. Are you saying that we should reject that factual finding that was adopted by the board, or what exactly is your position? No, Your Honor. There's two different issues here. One is how many employees at Pine Street knew of Mr. Quarles' incident at Market Street. They didn't necessarily know he was discharged for it or the details of it, but knew something about something that happened with Quarles at Market Street earlier. And that is four to five employees, as the hearing officer found. We, of course, accept that. The other issue is how many of those employees knew that Mr. Quarles was the union's observer. There's no evidence of the two Pine Street employees who testified. Only one testified that she knew who Mr. Quarles was. The other was not asked whether she knew anything about, you know, whether he was the observer at the election. And Mr. Quarles was only observing for half the session. So it's unless all four of those employees who knew about the incident had voted during Mr. Quarles' session, they wouldn't have even had reason to know that he was the observer or associate him with the union in any way. It's also, you know, under the board's finding, it's a bit of a moot point because it doesn't matter if those employees would have associated Mr. Quarles with the union because the board would not be offering in the previous misconduct by Mr. Quarles simply because he was sitting there as the union's observer, as in doing something else at the observer's table. Well, seeing as the court has no further questions, I request that you enforce the board's order in full. Thank you. Thank you. All right. We'll hear from Mr. Pyle. Yes, thank you. Good morning, Your Honors. Hunter Pyle for the union. I have nothing to add to the presentation that's already been made here this morning, but I wanted to answer any questions that the panel might have, if any. We, of course, agree that there's been no proffer as to two issues with regard to Mr. Quarles. One, there's been absolutely no connection between the alleged brandishing incident and the election. And the second is there's been no proof that Mr. Quarles was acting as an agent for the union in any way at that time. And there can be no proof because he wasn't. Do you think it's a good idea to have a person as an observer who was just fired for bringing a gun to work, even if it's an airsoft gun? No, Your Honor, not a good idea. Definitely not a good idea. But what the union knew at the time that it made its decision to include Mr. Quarles as an observer was what it knew, and it made the decision, I think, that the question is, did that impact this election in such a way that it should be overturned? And our answer is that it did not. It could not have under an objective standard. I don't have any questions. All right, thank you. Thank you very much. Just a few brief points. Initially there were some questions asked about what's known and what's known in the record. Mr. Quarles also testified at this hearing. He admitted that he had brought that gun to work. He admitted that he had shown that gun to at least one employee in the week or so before the election. I believe that citation is found at Joint Appendix 201 and 202. There is a picture of the gun in the record as well at Joint Appendix 210. It's a realistic gun. Was he asked what he said when he pulled out the gun? I don't recall specifically what he answered in response to that question or whether the question was asked, Judge. I apologize. It's a big mess, isn't it? Was you handling that case? I was not handling the case, nor was my firm at the time of the record below. Judge, there is, however, again, I think an employer is in a very difficult position here. We ask the questions about was there a proffer or an offer of proof. Certainly the employer was able to say what they knew. They knew what had been said to the supervisor. They have no ability, and they have to affirmatively tell the employee under Johnny's paltry, you don't have to answer our questions. You don't have to cooperate with us prior to the hearing. You only have to come in if subpoenaed and talk there. The employer got out as much of the information as it has. This is a highly disputed election. A comment that at least is proffered in the record through the supervisor is that the gun's there in case people get crazy. Again, the craziness going on at that time is the election. The individual is closely associated with the union within two days. What was the date of that comment? The date of the comment is difficult in the record. We know the employee reports it four days before the election. Roughly, what are we talking about? The 19th of June, I believe, is the date of the election, so it's roughly the 15th of June of 2015. Wow, it could have been politics. I suppose it could have been politics, but there's no evidence that that was being discussed at the facility at the time. There's no evidence of anything. If we had the employee there and the subpoena had been enforced, we would know the surrounding context of the remarks. If my hand had wheels, she'd be a trolley car. What was the standard that the hearing officer was supposed to employ in deciding whether to subpoena? The hearing officer should have determined whether or not the potential probative value of the evidence outweighed the delay. The hearing officer didn't go through that analysis at the hearing, as was pointed out to counsel for the board, originally focused on the lack of authority. You do see in the award an alternative argument given, but again it seems to focus on whether or not the employee was an agent of the union at the time and not on the issue of whether or not the statement was tied to the NLRB election. Only later did those arguments seem to creep into the award. The hearing officer certainly thought it was a different issue. Again, I understand how the board backs into the issue, but coming out post hoc to suggest that we're going to focus on the irrelevance of the testimony, we think is an error in this case. Thank you. We'll take the matter under submission. Thank you.
judges: Wilkins, Edwards, Silberman